KAREN P. HEWITT
United States Attorney
DOUGLAS KEEHN
Assistant U.S. Attorney
California State Bar No. 233686
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6549

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR2525-JM |
| | ) | |
| Plaintiff, | ) | **RESPONSE AND OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTIONS TO:** |
| v. | ) | |
| | ) | **(1)  COMPEL DISCOVERY** |
| ELMER MORALES, | ) | |
| | ) | **GOVERNMENT'S MOTIONS** |
| Defendant. | ) | |
| | ) | Date:        August 29, 2008 |
| | ) | Time:        11:00 a.m. |
| | ) | Court:       The Hon. Jeffrey T. Miller |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Douglas Keehn, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery.  This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

/ /

/ /

/ /

/ /

/ /

**I**

**STATEMENT OF FACTS**

**A. Statement of the Case**

On July 30, 2008, a federal grand jury handed up a one-count Indictment charging Defendant Elmer Morales with being a Deported Alien Found in the United States in violation of Title 8, United States Code, Section 1326(a) and (b). The Indictment also alleges that Defendant was removed from the United States subsequent to January 29, 1999. Defendant entered a "not guilty" plea before the magistrate court on August 4, 2008.

**B. Statement of Facts**

**1. Defendant's Arrest**

On May 29, 2008, at approximately 6:30 a.m., United States Border Patrol Agent (BPA) Samuel Lebron received a Remote Surveillance alert that an individual had just crossed the primary and secondary international border fences at a location approximately three miles east of the San Ysidro Port of Entry and approximately 20 yards north of the international boundary, and that this suspect had run northward toward an area known as "Cisneros." BPA Lebron knew that "Cisneros" is a point frequently used by aliens illegally entering the United States. Following directions provided by Remote Surveillance, BPA Lebron located the Defendant and questioned Defendant regarding his immigration status. Defiant first claimed he was a citizen of the Republic of Mexico and admitted that he had no legal permission to enter or remain in the United States. At approximately 6:45 a.m. BPA Lebron took Defendant into custody and transported him to the Imperial Beach Border Patrol Station.

At the station Defendant's biometric details were referenced within law enforcement databases. The records checks indicated Defendant is a citizen of El Salvador. When confronted with the discrepancy in his original identifying statement Defendant admitted he is a citizen of El Salvador. Defendant declined to speak with the El Salvadoran Consulate. At approximately 9:10 a.m. BPA Lebron advised Defendant of his Miranda rights and Defendant declined to answer further questions. All questioning ceased at this time.

//

1    **C. Defendant's Criminal and Immigration History**

2        On or about January 29, 1999, Defendant sustained a felony conviction for Aggravated

3    Robbery in Colorado, for which he was sentenced to 24 years in prison. On or about January 7,

4    1998, Defendant sustained a felony conviction for two counts of First Degree Criminal Trespass

5    in Colorado, for which he was sentenced to 18 months in prison. On or about January 12, 2000,

6    Defendant's probation was revoked and terminated in that matter. An Immigration Judge ordered

7    Defendant's removal from the United States on April 2, 2007, and Defendant was removed on

8    September 19, 2007.

9    **II**

10    **MOTIONS TO COMPEL DISCOVERY**

11        The Government has provided Defendant with 46 pages of discovery, the complaint and

12    statement of facts, reports from the apprehending agents, Defendant's prior conviction documents

13    and a DVD.

14        With respect to Defendant's discovery motions, the Constitution requires the Government

15    to preserve evidence "that might be expected to play a significant role in the suspect's defense."

16    California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government,

17    such evidence must (1) "possess an exculpatory value that was apparent before the evidence was

18    destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable

19    evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d

20    1104, 1113-14 (9th Cir. 2001). The Government will make every effort to preserve evidence it

21    deems to be relevant and material to this case. Any failure to gather and preserve evidence,

22    however, would not violate due process absent bad faith by the Government that results in actual

23    prejudice to the Defendant. See Illinois v. Fisher, 540 U.S. 544 (2004) (per curiam); Arizona v.

24    Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir.

25    2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

26        **(1) Defendant's Statements**

27        The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to

28    provide to Defendant the substance of Defendant's oral statements and Defendant's written

1    statements. The Government has produced all of the Defendant's statements that are known to the

2    undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or

3    written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such

4    statements will be provided to Defendant.

5         The Government has no objection to the preservation of the handwritten notes taken by any

6    of the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents

7    must preserve original notes of interviews of an accused or prospective government witnesses).

8         However, the Government objects to providing Defendant with a copy of the rough notes

9    at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of

10   those notes have been accurately reflected in a type-written report. See United States v. Brown,

11   303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule

12   16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor

13   discrepancies" between the notes and a report). The Government is not required to produce rough

14   notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined

15   18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a

16   witness' assertion, and (2) have been approved or adopted by the witness. United States v.

17   Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute

18   "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035,

19   1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were

20   scattered and all the information contained in the notes was available in other forms). The notes

21   are not Brady material because the notes do not present any material exculpatory information, or

22   any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at

23   595-96 (rough notes were not Brady material because the notes were neither favorable to the

24   defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71

25   (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was

26   insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable

27   under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

28   //

**(2) Defendant's Prior Record**

The Government has already provided Defendant with a copy of any criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(D).

**(3) Arrest Reports, Notes, Dispatch Tapes**

The Government has provided Defendant with all known reports related to Defendant's arrest in this case that are available at this time. The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16. As previously noted, the Government has no objection to the preservation of the agents' handwritten notes, but objects to providing Defendant with a copy of the rough notes at this time because the notes are not subject to disclosure under Rule 16, the Jencks Act, or <u>Brady</u>. The Government is presently unaware nor in possession of dispatch tapes relating to the Defendant's arrest in this case. In addition, the Government has already discovered a copy of the Report of Investigation for Defendant's case.

**(4) Documents and Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy any tangible objects seized that are within its possession, custody, or control, and that are either material to the preparation of Defendant's defense, or are intended for use by the Government as evidence during its case-in-chief at trial, or were obtained from or belong to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

**(5) Reports of Scientific Tests or Examinations**

The Government is not aware of any scientific tests or examinations at this time but, if any scientific tests or examinations were conducted or are conducted in the future, the Government will provide Defendant with any reports of any such tests or examinations in accordance with Rule 16(a)(1)(F).

**(6) Expert Witnesses**

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include expert witnesses' qualifications, expert witnesses' opinions, and the bases and reasons for those opinions.

### (7) **Brady** Material

The Government has and will continue to perform its duty under <u>Brady</u> to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment. The Government recognizes that its obligation under <u>Brady</u> covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the Government. <u>See Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>United States v. Bagley</u>, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. <u>Bagley</u>, 473 U.S. at 682; <u>United States v. Agurs</u>, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to <u>Brady</u>), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." <u>Kyles v. Whitley</u>, 514 U.S. 419, 436-37 (1995).

<u>Brady</u> does not, however, mandate that the Government open all of its files for discovery. <u>See United States v. Henke</u>, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam). Under <u>Brady</u>, the Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (<u>see United States v. Smith</u>, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (<u>see United States v. Bracy</u>, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (<u>see United States v. Mikaelian</u>, 168 F.3d 380, 389-90 (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. (<u>See United States v. Hanson</u>, 262 F.3d 1217, 1234-35 (11th Cir. 2001)). Nor does <u>Brady</u> require the Government "to create exculpatory evidence that does not exist," <u>United States v. Sukumolahan</u>, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply

a defendant with exculpatory information of which it is aware." <u>United States v. Flores</u>, 540 F.2d

432, 438 (9th Cir. 1976). 1988) ("No [<u>Brady</u>] violation occurs if the evidence is disclosed to the

defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand

for this information is premature.

### (8) Request for Preservation of Evidence

After issuance of a an order from the Court, the Government will preserve all evidence

to which Defendant is entitled to pursuant to the relevant discovery rules. However, the United

States objects to Defendant's blanket request to preserve all physical evidence. The United States

has complied and will continue to comply with Rule 16(a)(1)(c) in allowing Defendant an

opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is

within his possession, custody or control of the United States, and which is material to the

preparation of Defendant's defense or are intended for use by the United States as evidence in

chief at trial, or were obtained from or belong to Defendant, including photographs. The United

States has made the evidence available to Defendant and Defendant's investigators and will

comply with any request for inspection.

### (9) Proposed 404(b) and 609 Evidence

Should the Government seek to introduce any "similar act" evidence pursuant to Federal

Rules of Evidence 404(b) or 609(b), the Government will provide Defendant with notice of its

proposed use of such evidence and information about such bad act at or before the time the

Governments' trial memorandum is filed. The Government reserves the right to introduce as prior

act evidence any conviction, arrest or prior act that is disclosed to the defense in discovery.

### (10) Jencks Act Material

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified

on direct examination, the Government must give the Defendant any "statement" (as defined by

the Jencks Act) in the Government's possession that was made by the witness relating to the

subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks

Act is (1) a written statement made by the witness and signed or otherwise adopted or approved

by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's

1    oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes

2    are read back to a witness to see whether or not the government agent correctly understood what

3    the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks

4    Act.  United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United

5    States, 425 U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act

6    material after the witness testifies, the Government plans to provide most (if not all) Jencks Act

7    material well in advance of trial to avoid any needless delays.

8           **(11) A-File and (12) Record of Deportation Hearing**

9           The Government will produce documentation regarding any removals and/or proceedings

10    that the Government intends to introduce at trial.  Additionally, if so directed by the Court the

11    Government does not object to setting up a viewing of the discoverable portion of Defendant's A-

12    file at a time that is mutually convenient for the parties.  However, the A-file also contains attorney

13    work product and other information that is not discoverable.  Moreover, this information is equally

14    available to Defendant through a Freedom of Information Act request.  Even if Defendant could

15    not ascertain the A-File through such a request, the A-File is not Rule 16 discoverable information.

16    The A-File contains information that is not discoverable like internal government documents and

17    witness statements. See Fed. R. Crim. P. 16(a)(2).  Witness statements would not be subject to

18    production until after the witness for the Government testifies and provided that a "motion" is

19    made by Defendant. See Fed. R. Crim. P. 16(a)(2) and 26.2.  Thus, the A-File associated with

20    Defendant need not be disclosed.   The Government has produced and will continue to produce

21    documents it intends to use in its case-in-chief. Evidence is material under Brady only if there is

22    a reasonable probability that had it been disclosed to the defense, the result of the proceeding

23    would have been different. See United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

24    However, Defendant has not shown how documents in the A-File are material.  Finally, Defendant

25    does not own the A-File.  It is an agency record.  See United States v. Loyola-Dominguez, 125

26    F.3d 1315 (9th Cir. 1997) (noting that A-File documents are admissible as public records).

27    //

28    //

**(13) Residual Request**

The Government will comply with all of its discovery obligations, but objects to the broad and unspecified nature of Defendant's "residual" discovery request.

**V**

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motions for reciprocal discovery and to compel a fingerprint exemplar.

DATED: August 15, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Douglas Keehn*
DOUGLAS KEEHN
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 08CR2525-JM |
| Plaintiff, ) | |
| ) | CERTIFICATE OF SERVICE |
| v. ) | |
| ) | |
| ELMER MORALES, ) | |
| Defendant. ) | |
| ————————————————— ) | |

IT IS HEREBY CERTIFIED THAT:

     I, Douglas Keehn, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION TO THE DEFENDANT'S MOTION TO COMPEL DISCOVERY** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Siri Shetty, Esq.**
*Attorney for Defendant*

     I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

     None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on August 15, 2008

                   /s/ **Douglas Keehn**
                   DOUGLAS KEEHN